# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No. 2:21-cv-04254-MHW-EPD |
| Plaintiff, | Judge Michael H. Watson |
| v. | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

## DEFENDANT THE OHIO STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted against it in plaintiff's Complaint (Doc. 1). The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

            DAVID A. YOST
            ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
     Michael H. Carpenter (0015733) (Trial Attorney)
     Timothy R. Bricker (0061872)
     David J. Barthel (0079307)
     CARPENTER LIPPS AND LELAND LLP
     280 Plaza, Suite 1300
     280 North High Street
     Columbus, OH 43215
     Phone: (614) 365-4100
     Fax: (614) 365-9145
     E-mail: carpenter@carpenterlipps.com
             bricker@carpenterlipps.com
             barthel@carpenterlipps.com

     Special Counsel for Defendant
     The Ohio State University

**MEMORANDUM IN SUPPORT**

I.     **INTRODUCTION.**

The Ohio State University ("Ohio State") has condemned the conduct of former Ohio State physician Dr. Richard Strauss and the university's failure at the time to prevent the abuse, and has expressed its regret and sincere apologies to each person who endured Strauss' abuse, including the plaintiff herein. The instant motion to dismiss is ***not*** directed toward plaintiff's claims of injury. Rather, while respectful of plaintiff and his claimed injuries, Ohio State maintains that the Title IX claims asserted by plaintiff are ***legally*** deficient on their face and should be dismissed.

Without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred.  The Supreme Court of the United States has observed that statutes of limitations are "vital to the welfare of society"; are "found and approved in all systems of enlightened jurisprudence"; and "promote repose by giving security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879).  The Supreme Court has explained that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Based on these policies, courts across the country, including this Court, have consistently dismissed Title IX claims alleging sexual misconduct that occurred decades ago.

On September 22, 2021, this Court granted Ohio State's motions to dismiss in the *Garrett*, *Snyder-Hill*, *Ratliff*, and *Nutter* cases, finding that the two-year statute of limitations barred the

same Title IX claims that plaintiff asserts here.[1] The Court's findings apply to, and are dispositive of, the statute of limitations issue in this action.

The statute of limitations for plaintiff's Title IX claims is two years. Plaintiff alleges he was a student-athlete on Ohio State's football team between 1985 and 1990 and that Strauss abused him during a physical exam in August 1986—35 years before plaintiff filed his Complaint. ***Significantly, plaintiff also expressly admits that he was aware Strauss was sexually abusing him at the time it occurred.*** The two-year limitations period expired long ago, and plaintiff's Title IX claims should be dismissed for the reasons set forth in the *Garrett et al*. Opinions.

In filing this motion to dismiss, Ohio State is not ignoring or being dismissive of plaintiff's factual allegations. But statutes of limitations are critical attributes of our system of laws. Here, plaintiff's claims are legally barred.

## II. PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS.

The above-captioned action is one of 37 separate actions that were filed against Ohio State relating to the conduct of former Ohio State physician Dr. Richard Strauss. Although Ohio State has settled claims despite their time-barred nature, additional plaintiffs continue to file complaints and amended complaints against Ohio State.

On August 25, 2021—more than three years after the first lawsuit related to Strauss was filed against Ohio State—the plaintiff herein filed his Complaint asserting only Title IX claims against Ohio State (Doc. 1). Plaintiff alleges he attended Ohio State as a student-athlete on Ohio State's football team between 1985 and 1990,[2] and that Strauss abused him during a physical examination in August 1986—35 years ago. *See* Compl. at ¶¶ 8, 10, 44. Plaintiff asserts only

---

[1] *See Garrett*, Case No. 2:18-cv-00692 (Doc. 197) ("*Garrett* Opinion"); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158) ("*Snyder-Hill* Opinion"); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); *Nutter*, Case No. 2:19-cv-02462 (Doc. 53) (collectively, "*Garrett et al.* Opinions").
[2] Plaintiff alleges he took a leave of absence from Ohio State in the 1987-1988 academic year. Compl. at ¶¶ 31, 41.

claims pursuant to Title IX, 20 U.S.C. § 1681, *et seq.*, against Ohio State. *Id.* at ¶¶ 101-118 (Counts I and II).

Strauss worked at Ohio State from 1978 to 1998, and died in 2005. *Id.* at ¶¶ 3, 35. Thus, plaintiff's Title IX claims are based on acts alleged to have been committed 35 years ago, by someone who ceased being employed at Ohio State 23 years ago, and who died 16 years ago.

### III.     FED. R. CIV. P. 12(b)(6) STANDARD.

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege sufficient facts to state a claim that is "plausible on its face." *Garrett* Opinion (Doc. 197) at 3 (quoting *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Importantly, whether a complaint satisfies the *Iqbal*/*Twombly* plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). In addition, the Court "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995); *see also* Wright & Miller, Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) (courts need not accept "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "mere conclusory statements," or "sweeping legal conclusions cast in the form of factual allegations.").

As this Court stated in the *Garrett et al*. Opinions, "statute-of-limitations defenses may be properly raised in a Rule 12(b)(6) motion." *Garrett* Opinion (Doc. 197) at 3 (citing *Gibson v. Am.*

4

*Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012) ("Dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred.")); *Snyder-Hill* Opinion (Doc. 158) ("As the Court explained in *Garrett*, statute-of-limitations defenses may be properly raised in a motion to dismiss"); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ."); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (affirming dismissal based on statute of limitations bar where "the allegations in the complaint affirmatively show that the claim is time-barred"); *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense.").

### IV. PLAINTIFF'S TITLE IX CLAIMS ARE BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

Plaintiff attempts to state claims pursuant only to Title IX.[3]  *See* Compl. (Doc. 16) at ¶¶ 101-118.  "Title IX does not contain its own statute of limitations." *Garrett* Opinion (Doc. 197) at 6 (quoting *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts")).  "Title IX actions, therefore, borrow the state statute of limitations for personal

---

[3] Plaintiff's Complaint divides his Title IX claims into two sub-categories:  "OSU's Sexually Hostile Culture and Heightened Risk of Sexual Harassment" (Count I) and "OSU's Deliberate Indifference to Reported Sexual Harassment") (Count II). In its *Garrett et al*. Opinions, however, this Court stated that "Ohio State is correct that Plaintiffs have not cited any case law suggesting the Sixth Circuit recognizes a 'heightened risk' theory of Title IX deliberate indifference." *Garrett* Opinion at 22.

5

injuries." *Garrett* Opinion (Doc. 197) at 6 (citing *Lillard*, 76 F.3d at 729). "Ohio Revised Code § 2305.10 provides for a two-year statute of limitations for personal injury claims. Accordingly, Title IX claims in Ohio have a two-year statute of limitations." *Garrett* Opinion (Doc. 197) at 7 (citing *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018)).

"Although state law controls the duration of the statute of limitations, federal law governs when the claim accrues." *Garrett* Opinion (Doc. 197) at 7 (citing *Sharpe v. Cureton*, 319 F. 3d 259, 266 (6th Cir. 2003)). "The 'standard rule' is that a cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Garrett* Opinion (Doc. 197) at 7 (quoting *D'Ambrosio v. Marino*, 747 F. 3d 378, 384 (6th Cir. 2014)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Significantly, neither the United States Supreme Court nor the Sixth Circuit has held that the discovery rule applies to claim accrual under Title IX. *See Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at *4 (E.D. Mich. May 6, 2021) (stating "[t]he Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims. . . . The Supreme Court in *TRW Inc. v. Andrews* noted that while many federal courts 'apply a discovery accrual rule when a statute is silent on the issue,' the Court 'has not adopted that position as [its] own.'"). As this Court stated in its *Garrett et al*. Opinions regarding the discovery rule:

> There is good reason to think the Sixth Circuit might not adopt the discovery accrual rule in Title IX cases. Recently, in *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019), the United States Supreme Court decided whether the statute of limitations in the Fair Debt Collection Practices Act ("FDCPA") was triggered by a discovery rule. Unlike Title IX, the FDCPA contains an explicit statute of limitations; thus, the Supreme Court engaged in statutory interpretation when determining if the FDCPA's statute of limitations was subject to a discovery rule. *Id*. Despite that factual difference, the Supreme Court's analysis in *Rotkiske* is helpful because it assumed that the "standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action" and that Congress legislates

6

> against that standard rule. *Id*. (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U. S. 409, 418-19 (2005)). The Supreme Court rejected the appellant's request to read into the FDCPA statute of limitations a general discovery rule, calling such an expansive approach to the discovery rule a "bad wine of recent vintage," *id*. (quoting *TRW Inc. v. Andrews*, 534 U. S. 19, 37 (2001) (Scalia, J, concurring)), and refused to engage in "[a]textual judicial supplementation." *Id*. at 361.
>
> The Sixth Circuit has since recognized the tension between the Supreme Court's language in *Rotkiske* and the Sixth Circuit's prior caselaw applying a default discovery rule to the accrual of § 1983 claims. *See Dibrell v. City of Knoxville, Tenn*., 984 F. 3d 1156, 1162 (6th Cir. 2021) (contrasting the occurrence rule with the discovery rule and observing that "[a]ny presumption favoring that discovery rule, the [Supreme] Court recently clarified, represents a bad wine of recent vintage" (internal quotation marks and citations omitted)); *see also Everly v. Everly*, 958 F.3d 442, 460 (6th Cir. 2020) (Murphy, J., concurring) (maintaining that "[h]istorically, courts used the occurrence rule").
>
> The Sixth Circuit has not yet overturned *Sevier* and other cases holding that the discovery rule is the default rule in the § 1983 context, however. *See Dibrell*, 984 F. 3d at 1162 ("Do our cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings? We need not resolve this tension now because [the plaintiff's] claims would be untimely either way."). It is thus unclear whether the Sixth Circuit would continue to apply the discovery accrual rule in § 1983 cases or would adopt the discovery accrual rule in Title IX cases. *Cf. Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 438-39 (S.D.N.Y. 2014) (recognizing the plaintiffs' request to apply a discovery rule to a Title IX claim "ignore[s] the continuing significance of the 'standard rule' that claims accrue upon existence of a complete and present cause of action" and that the discovery rule "remains-despite certain departures-an exception" to the standard rule but declining to decide whether the occurrence or discovery rule applied); *Varnell v. Dora Consol. Sch. Dist*., 756 F. 3d 1208, 1210, 1215-17 (10th Cir. 2014) ("Plaintiff's federal claims accrued when she could file suit and obtain relief, which was no later than when the abuse stopped, not when she allegedly learned the full extent of the resultant emotional injury."); *Forrester v. Clarenceville Sch. Dist*, No. 20-12727, 2021 WL 1812700, at *4 (E. D. Mich. May 6, 2021) ("The Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims.").

*Garrett* Opinion (Doc. 197) at 8-10.

This Court concluded in *Garrett et al*. that it "need not definitively decide the issue either, though, as Plaintiffs' claim is untimely under both rules. Indeed, the accrual date is the same under either rule." *Id*. at 10. Specifically, in regard to the occurrence rule, this Court stated in its *Garrett*

7

*et al*. Opinions:

> Under the occurrence rule, each Plaintiff's claim against Ohio State accrued, at the latest, when all of the elements of his Title IX claim were established. In other words, each Plaintiff's Title IX claim accrued the moment that Plaintiff suffered the Title IX injury—i.e., was deprived of "access to the educational opportunities or benefits provided by" Ohio State because of post-actual-knowledge harassment by Strauss (which harassment would not have happened but for the clear unreasonableness of Ohio State's response). . . .
>
> For the majority of Plaintiffs, the latest date on which their Title IX injury could have occurred is the date of their graduation or the date they dropped out of Ohio State, for that is the latest moment they were deprived of access to educational opportunities or benefits provided by Ohio State as a result of Ohio State's deliberate indifference. . . . Plaintiffs in this case graduated, at the latest, in the late 1990s. Even assuming the latest Plaintiff graduated in 1999, his claim would need to have been filed within two years of graduation—by sometime in 2001. Plaintiffs did not file their Complaint in this case until July 16, 2018. Consequently, under the occurrence rule, Plaintiffs' Complaint was untimely by at least eighteen years.

*Id*. at 10-12 (internal citations omitted).

> In regard to the discovery rule, this Court stated in its *Garrett et al*. Opinions:
>
> As the Supreme Court has recognized, when the discovery rule applies, "discovery of the injury, not discovery of the other elements of the claim, is what starts the clock." *Rotella v. Wood*, 528 U. S. 549, 555 (2000); *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (In other words, "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." (internal quotation marks and citation omitted)).
>
> In Title IX cases, many courts find, for purposes of applying the discovery rule, that the injury is the sexual harassment or abuse such that the claim accrues the moment a plaintiff knows or has reason to know of the sexual harassment or abuse. . . .
>
> Other courts find the injury occurs at the time the plaintiff is deprived of educational opportunities or benefits by the defendant school. . . . .
>
> As explained above, Plaintiffs were abused from the 1970s-1990s. So, even if the Court applied the discovery rule and found the claims accrued when Plaintiffs knew or should have known of their abuse, the claims accrued on the latest date of abuse for each Plaintiff, which occurred well before two years prior to the filing of the Complaint. Similarly, if the Court applied the discovery rule and considered the injury to be Plaintiffs' deprivation of the educational opportunities or benefits of Ohio State, Plaintiffs knew or should have known of those injuries by the time they

8

graduated or dropped out of Ohio State.[6] Either way, Plaintiffs' Title IX claims are barred by the statute of limitations, even under the discovery rule.

> [6] The accrual date under this analysis matches the accrual date under the Occurrence Rule because Plaintiffs were undoubtedly aware of the deprivation of educational opportunities or benefits by the time they graduated or withdrew from Ohio State.

*Id*. at 12-15 (internal citations omitted).[4]

Based on this Court's accrual analysis in the *Garrett et al*. Opinions, plaintiff's Title IX claims accrued when the alleged abuse occurred in August 1986 (at the earliest) or when plaintiff left Ohio State in 1990 (at the latest). Plaintiff did not, however, file suit until August 25, 2021. Thus, plaintiff's Title IX claims were filed more than 29 to 33 years after the applicable two-year statute of limitations had expired.

It is also significant that plaintiff does not argue he was unaware Strauss had sexually abused him at the time the abuse occurred. Plaintiff expressly admits: "As Dr. Strauss continued to examine [plaintiff], ***[plaintiff] came to realize that Dr. Strauss was sexually abusing him***" and that "[a]fter the exam, ***knowing that Dr. Strauss had sexually abused him***, [plaintiff] was mortified, deeply ashamed of himself, and embarrassed. Compl. (Doc. 1) at ¶¶ 13-14, 51, 53 (emphasis added). Plaintiff also alleges all of the following, which further establish his awareness of the abuse at the time it occurred and of Ohio State's possible deliberate indifference to it:

- "Up to this point, [plaintiff] had been a superstar athlete for most of his life and, thus, had experienced countless prior physicals." *Id*. at ¶ 10

- Strauss "manipulate[d], caress[ed], and fondle[d] [plaintiff's] genitalia for several minutes." *Id*. at ¶ 11.

- "[Plaintiff], having had many hernia exams before, knew this was unusual . . . ." *Id*. at ¶

---

[4] In its *Garrett et al*. Opinions, this Court stated that "the statute of limitations analysis for Plaintiffs' deliberate indifference claim applies with equal force to any separately asserted hostile environment theory of liability because Plaintiffs were certainly aware by the time they graduated that their educational experiences were permeated by a sexually hostile environment. Indeed, any claim would fail on the merits were Plaintiffs unaware." *Garrett* Opinion (Doc. 197) at 4 n.3.

9

12.

- Plaintiff "found this very strange and uncomfortable[.]"  It was not "the type of hernia exam to which [plaintiff] had become accustomed[.]" *Id*. at ¶ 47.

- Strauss "continued to manipulate, caress, and fondle [plaintiff's] genitalia for several more minutes." *Id*. at ¶ 12; *see also id*. at ¶ 48, 50.

- "It was clear to [plaintiff] that Dr. Strauss was enjoying the session and may have even become sexually aroused during the session."  *Id*. at ¶¶ 13, 51.

- "Despite towering over Dr. Strauss at 6'2" and 220lbs., [plaintiff] was frozen in place by Dr. Strauss's conduct—feeling helpless and entirely unsure of what to do—except to let Dr. Strauss finish the exam so that [plaintiff] could get out of the room and away from Dr. Strauss as soon as possible." *Id*. at ¶¶ 13, 52 (emphasis omitted).

- Plaintiff complained to Ohio State's Head Athletic Trainer, asking "Dr. Strauss, what is this guy doing?" The Trainer "responded by simply nodding his head and saying, 'it's not up to me.' [Plaintiff] was not exactly sure what that meant, and not wanting to discuss the specific details of his abuse, [plaintiff] left [the Trainer's] office and never spoke of the matter again with anyone at OSU." *Id*. at ¶¶ 15, 54.

- Plaintiff told his wife and parents about the abuse prior to the announcement in 2018 of the Perkins Coie investigation. *Id*. at ¶ 16.

In addition to the above, plaintiff alleges he "was subjected to the severest of sexual abuse by Dr. Strauss[.]" *Id*. at ¶ 117.  "The sexual abuse that [plaintiff] suffered was so severe that it effectively barred his access to continued educational opportunities[.]" *Id*. at ¶ 112.  "[T]he sexual abuse inflicted by Dr. Strauss upon [plaintiff] had a gradual and lasting psychological impact on every aspect of [plaintiff's] life, and in particular his athletic career." *Id*. at ¶ 43.  "Immediately following the sexual abuse by Dr. Strauss," plaintiff "began to binge drink large quantities of alcohol . . . in order to try to forget what Dr. Strauss had done to him." *Id*. at ¶ 55.  "[A]fter games, matches, practices, and school, all [plaintiff] would think about was Dr. Strauss.  Questions of 'how could I have let him do this to me?'; 'why did I not stop him?'; and 'why did I not lay him out on the spot?' dominated [plaintiff's] thoughts perpetually." *Id*. at ¶ 56.  "To stop these never-ending visions of Dr. Strauss's abuse, [plaintiff] drank whenever he was not engaged in athletic

competition or academics." *Id*. at ¶ 57. "To this day, every time [plaintiff] goes for a physical, the thoughts of what Dr, Strauss did to him runs through his mind. During these exams, even over thirty (30) years later, [plaintiff] often becomes overwhelmed with emotions and paralyzed by the fear that he will have to relive the sexual abuse he experienced with Dr. Strauss." *Id*. at ¶ 63. When the Perkins Coie investigation was announced around April 2018, plaintiff "was reluctant to get involved for fear that he would have to detail and relive one of the most traumatic experiences of his entire life." *Id*. at ¶ 64.

Plaintiff further alleges that Strauss' conduct was so "rampant," "pervasive," and "inappropriate" that it was widely known, and complaints by students and student-athletes (including by plaintiff who alleges he complained to the Head Athletic Trainer) were widespread. *See id*. at ¶ 6 ("reports of his sexual assaults on students began to pour in during Dr. Strauss's very first year at OSU"); ¶ 6 ("scores of reports of Dr. Strauss's sexual abuse were received by OSU administrators"); ¶ 17 ("many OSU employees and officials . . . received scores of credible reports that Dr. Strauss was sexually assaulting students"); ¶ 20 (OSU "receiv[ed] numerous credible reports of Dr. Strauss's sexual abuse of OSU students and student-athletes by no later than 1979 (and then no less than hundreds of reports as the years past)"); ¶ 21 ("rampant sexual abuse of OSU students by Dr. Strauss"); ¶ 23 ("many complaints of Dr. Strauss's sexual abuse and harassment"); ¶ 64 ("pervasive sexual abuse of OSU students and student-athletes by Dr. Strauss for many years"); ¶ 68 ("Beginning in 1978, Dr. Strauss's first year at OSU, and continuing throughout his twenty (20) years at OSU, students and OSU staff reported and referred complaints about Dr. Strauss to numerous OSU employees and administrators."); ¶ 69 ("student-athlete complaints about Dr. Strauss"); ¶ 72 ("complaints of sexual abuse by Dr. Strauss date back as early as 1979, with approximately half the reports occurring from 1979 to 1988, covering the years in

11

which [plaintiff] was sexually abused and assaulted as a student-athlete at OSU"); ¶ 78 ("complaints of sexual assaults by Dr. Strauss continued to skyrocket over the years"); ¶ 78 (complaints about Strauss were "persisten[t], serious[], and regular[]"); ¶ 78 ("reports of Dr. Strauss's abuse began pouring in almost immediately after his employment at OSU began in 1978"); ¶ 91 (Strauss' "history and scope of sexual abuse at OSU" were "well-known"); ¶ 111 ("reports of his sexual abuse of students began pouring in"); ¶ 114 ("Moreover, between 1978 and 1996, numerous students and student-athletes complained to OSU administrators and staff about Dr. Strauss' inappropriate conduct").

Based on factually similar and legally indistinguishable complaint allegations, this Court refused to accept other Strauss plaintiffs' conclusory complaint allegations and argument that they "did not know or should not reasonably have known they were sexually abused until the issuance of the Perkins Coie Report." *Garrett* Opinion at 18 n.7. In so holding, this Court found that "[t]he Complaint is replete with allegations that Plaintiffs were concerned by Strauss's abuse and felt violated by it, discussed the abuse with teammates, classmates, or family members, reported the abuse themselves, or that the abuse caused them immediate mental and emotional distress." *Id*. at 18-19 n.7; *see also Snyder-Hill* Opinion at 2 (stating that "the Second Amended Complaint provides all the information the Court needs to conclude that Plaintiffs' claims are barred by the statute of limitations"). The same findings apply to, and are dispositive of, plaintiff's Title IX claims here.

## V. PLAINTIFF WAS AWARE OF THE CLAIMED CAUSAL CONNECTION BETWEEN THE ALLEGED ABUSE AND OHIO STATE.

As discussed above, plaintiff admits he was aware Strauss had abused him at the time the abuse occurred. Plaintiff also alleges in his Complaint, however, that he was unaware, and could not have discovered, until the Perkins Coie investigation was announced in 2018 that Strauss had

abused other Ohio State students and Ohio State was deliberately indifferent to the abuse. Compl. (Doc. 1) at ¶¶ 9, 16, 64, 96-100. These allegations do not render plaintiff's Title IX claims timely.

This Court rejected the same conclusory allegations and argument by plaintiffs in the *Garrett et al*. Opinions, stating:

> Plaintiffs argue that knowledge of injury is alone insufficient to trigger accrual under the discovery rule and that, instead, a claim does not accrue under the discovery rule until a plaintiff knows or should know of both his injury and its cause. According to Plaintiffs, the "cause" here is Ohio State's deliberate indifference, so their claims did not accrue until they knew or should have known of their injuries and that those injuries were caused by Ohio State's deliberate indifference. . . . Plaintiffs' Title IX injury (deprivation of educational opportunities or benefits provided by Ohio State) was attributable to Strauss' abuse, and Plaintiffs knew both of the injury and its cause (the abuse), which was sufficient to put them at least on inquiry notice to determine whether the injury would have occurred but for Ohio State's deliberate indifference. . . . Plaintiffs' argument that the statute of limitations did not begin to run until they learned of Ohio State's deliberate indifference via the Perkins Coie report is therefore incorrect as a matter of law.
>
> * * *
>
> Unfortunately, the very effect the abuse had on Plaintiffs (i.e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference.
>
> * * *
>
> Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint. For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State. Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.
>
> * * *
>
> Even if the Sixth Circuit recognizes a heightened risk theory of liability under Title IX, Plaintiffs' claims in this case are barred by the statute of limitations. In cases where the heightened-risk claim is based on a university's deliberate indifference to prior complaints of student-on-student harassment, it makes sense that a plaintiff

13

> may have no reason to suspect the school's knowledge of, and deliberate indifference to, prior complaints until a subsequent investigation, admission, or news report breaks.
>
> Here, however, the perpetrator was an employee of Ohio State. Not only that, but Plaintiffs' complaints make clear that Strauss's abuse was widely known amongst both students and faculty. This general knowledge is enough to have put Plaintiffs on notice that Ohio State may have received complaints about Strauss in the past and yet continued employing him. Accordingly, even if the Sixth Circuit recognizes a heightened risk theory of liability, Plaintiffs' claims are time-barred.

*Garrett* Opinion at 16-19, 23 & n.7 & 8 (internal citations omitted).

In support of the above findings, this Court cited numerous cases in which courts have refused to find a delayed accrual of the statute of limitations where plaintiffs alleged they lacked information about the schools' roles in not preventing the claimed abuse or because the schools concealed it from plaintiffs. *Id.* at 17-21 (collecting cases).[5] Many of these cases also hold,

---

[5] S*ee also Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) ("Even if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not "exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue); *Anderson v. Bd. of Ed. of Fayette Cty.*, 616 F.Supp.2d 662, 671 (E.D. Ky. 2009) ("Plaintiffs were sufficiently aware of facts that should have aroused their suspicion of the claims against Defendants at the time of their injuries . . . There is no indication that Plaintiffs exercised any diligence, ordinary or otherwise, to uncover the source of their injuries prior to the expiration of the statute of limitations for their claims, and the Board is entitled to be free of such stale claims"); *Forrester*, 2021 WL 1812700, at *5 (Title IX claims accrued when the abuse occurred, not years later when plaintiffs "learned in August 2020 that Defendant Debandt abused many students and school administrators were notified of the abuse and failed to stop it"; "[E]ven assuming that Plaintiffs were not aware of all the facts needed to prove that 'the District acted with deliberate indifference to [the] assaults,' Plaintiffs' claims accrued when they became aware of their injuries and the abuse."); *cf. Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9, 14-15 (6th Cir. 2012) (Section 1983 claims arising from abuse at county summer program accrued when the abuse occurred, not when plaintiffs "discovered that the defendants knew about and facilitated the abuse"); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 443-439 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (Title IX claim accrued at the time high school students were abused, not two decades later when a newspaper article reported school administrator's admission that he and other administrators had been aware of the risk of sexual abuse when it was occurring); *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (Title IX claim accrued when plaintiff was abused by teacher, not when plaintiff learned nearly two years later during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse; "Even if we assume that the relevant injury was the conduct of HISD and the School Officials rather than the sexual abuse itself, [p]laintiffs had sufficient awareness of that conduct prior to the spring of 2011 for their claims to accrue.. . . A. W. was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher."); *Varnell v. Dora Consol. Sch. Dist.*, 2013 WL 12146483, at *6-*7 & n.4, *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013), *aff'd*, 756 F.3d 1208 (10th Cir. 2014) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct *when it was occurring*"); *Doe v. Univ. of S. California*,

14

consistent with this Court's *Garrett et al*. Opinions, that a Title IX claim accrues where, as here, the plaintiff was aware of the acts complained of, the abuser's identity, and that the abuser was an employee of the school.[6]

As previously set out above, plaintiff's allegations are factually similar to, and legally indistinguishable from, the allegations in the *Garrett et al*. cases. Therefore, his causation argument should be rejected for the same reasons set out in this Court's *Garrett et al*. Opinions.

In addition, plaintiff's allegations that he did not know, or could not have discovered, Ohio State's alleged role in the abuse are further undercut by plaintiff's alleged interactions with Ohio State's Head Athletic Trainer following the abuse. Plaintiff alleges that when he asked the Head Athletic Trainer, "Dr. Strauss, what is this guy doing?" the Trainer "responded by simply nodding his head and saying, 'it's not up to me.' [Plaintiff] was not exactly sure what that meant, and not wanting to discuss the specific details of his abuse, [plaintiff] left [the Trainer's] office and never

---

No. 218CV09530SVWGJS, 2019 WL 4229750, at *4 (C.D. Cal. July 9, 2019) (Title IX claim accrued at time of abuse by gynecologist, not decades letter when plaintiff read a newspaper article that "fully exposed" the "true extent" of the physician's abuse of other patients).

[6] *See*, *e.g*., *Anderson*, 616 F. Supp. 2d at 668, 671 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *Forrester*, 2021 WL 1812700, at *6 (Title IX claims accrued at the time of the alleged abuse where "Plaintiffs do not contest that they knew or should have known Defendant Debandt was an employee of Defendant Clarenceville School District and that Defendants Shepich, Nelson, Kantor, Valentine, and Bergeron were Defendant Debandt's supervisors and had control over his conditions of employment."); *King-White*, 803 F.3d at 762 (Title IX claim accrued at time of abuse where student "was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher"); *Twersky*, 579 F. App'x at 9-10 (Title IX claim accrued at time of abuse because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers"); *A.W. v. Humble Indep. Sch. Dist*., 25 F. Supp. 3d 973, 991 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist*., 803 F.3d 754 (5th Cir. 2015) ("Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover"); *Wilmink v. Kanawha Cty. Bd. of Educ*., 214 F. App'x 294, 296 (4th Cir. 2007) (plaintiff was required to bring her Title IX claim within "two years after she turned eighteen" where it was "beyond dispute that plaintiff knew she had been injured in 1984" and "knew the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty"—"her principal and her school board"—"by the time she reached majority").

spoke of the matter again with anyone at OSU." *Id*. at ¶¶ 15, 54.

The Head Athletic Trainer's alleged response to the abuse was "sufficient to put [plaintiff] at least on inquiry notice to determine whether the injury would have occurred but for Ohio State's deliberate indifference," thereby triggering the accrual of plaintiff's Title IX claims against Ohio State under the discovery rule. *Garrett* Opinion at 17.  Plaintiff also was required to exercise "reasonable diligence" to discover his injuries and whether he had a potential claim against Ohio State.  *Id*. at 8, 20 (citing *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007); *Anderson v. Bd. of Educ. of Fayette Cty*., 616 F. Supp. 2d 662, 670 E.D. Ky. 2009)); *see also United States v. Kubrick*, 444 U.S. 111, 123 (1979) (a plaintiff not certain whether conduct is actionable "can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."). Plaintiff has affirmatively pled in his Complaint that he did not exercise such diligence.  His Title IX claims are time-barred as a matter of law.

## VI.    CONCLUSION.

For the reasons stated above, plaintiff's Complaint (Doc. 1) should be dismissed with prejudice.

        Respectfully submitted,

        DAVID A. YOST
        ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        Phone: (614) 365-4100
        Fax: (614) 365-9145
        E-mail: carpenter@carpenterlipps.com
               bricker@carpenterlipps.com
               barthel@carpenterlipps.com

        Special Counsel for Defendant
        The Ohio State University

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on October 25, 2021. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University