THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No. 2:21-cv-04254-MHW-EPD |
| | ) | |
| Plaintiff, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.    INTRODUCTION.

Plaintiff's opposition (Doc. 10) asserts the same arguments made by 290 other plaintiffs in 11 cases that this Court thoroughly considered, addressed, and rejected in its decisions in the *Garrett*, *Snyder-Hill*, *Ratliff*, *Nutter*, *Moxley*, *Alf*, *Shavers*, *John Does 151-166*, *John Does 172-191 and Jane Doe 1*, *John Does 192-217*, and *Canales* cases (collectively, "*Garrett et al.* Opinions"), finding in each case that the two-year statute of limitations barred the same Title IX claims that plaintiff asserts here.[1]

Plaintiff admits all of the following:

(1)    Ohio's two-year personal injury statute of limitations applies to his Title IX claims.

(2)    Dismissal of plaintiff's Title IX claims based on the statute of limitations is appropriate if the plaintiff's complaint allegations show that the claims are time-barred.

(3)    Plaintiff was aware he was being sexually abused at the time it occurred.

---

[1] *See Garrett*, Case No. 2:18-cv-00692 (Doc. 197) ("*Garrett* Opinion"); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158) ("*Snyder-Hill* Opinion"); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); *Nutter*, Case No. 2:19-cv-02462 (Doc. 53); *John Does 151-166*, Case No. 2:20-cv-03817 (Doc. 41); *Shavers*, Case No. 2:21-cv-02120 (Doc. 22); *John Does 172-191*, Case No. 2:21-cv-02121 (Doc. 18); *John Does 192-217*, Case No. 2:21-cv-02527 (Doc. 24); *Alf*, Case No. 2:21-cv-02542 (Doc. 18); *Canales*, Case No. 2:21-cv-02562 (Doc. 19); and *Moxley*, Case No. 2:21-cv-03838 (Doc. 26).

(4)     Numerous students, including plaintiff himself, complained to Ohio State about Strauss's conduct, and Ohio State failed to stop it.

(5)     Strauss's abuse was rampant, pervasive, and widely known by both student-athletes (like plaintiff) and faculty.

(6)     Plaintiff knew Ohio State was Strauss's employer.

Plaintiff's opposition is flawed because it is based on the prior "beyond doubt"/"no set of facts" Fed. R. 12(b)(6) standard that was abrogated by the Supreme Court's "plausibility" standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A straightforward application of the correct principles governing claim accrual, as set out in the *Garrett et al*. Opinions, requires dismissal of plaintiffs' Title IX claims as barred by the statute of limitations.

## II.     PLAINTIFF'S TITLE IX CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.

### A.     Plaintiff Misstates The Fed. R. Civ. P. 12(b)(6) Standard of Review.

Plaintiff's opposition brief relies upon an incorrect standard of dismissal based on the statute of limitations.  Specifically, the "Legal Standard" section of plaintiff's opposition cites authority that "a motion to dismiss 'should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Opp. at 10 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Plaintiff repeats this error in the concluding sentence of his opposition brief, which states: "OSU's motion to dismiss pursuant to Rule 12(b)(6) should be denied in its entirety because OSU has not met its burden of 'affirmatively show[ing] that [plaintiff] can prove *no* set of facts that would entitle him to relief." Opp. at 21 (quoting *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002)).

As this Court found in its *Snyder-Hill* Opinion, however, the above standard plaintiff relies upon is old law that no longer applies:

Moreover, Plaintiffs' reliance on the "beyond doubt" standard is misplaced. The "beyond doubt" standard has not been the applicable standard for a Rule 12(b)(6) motion since the Supreme Court of the United States' decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). Thus, Plaintiffs' reliance on that standard is without merit.

*Snyder-Hill* Opinion at 2-3. *See also Boxill v. O'Grady*, 935 F.3d 510, 517 n.3 (6th Cir. 2019) (stating that the "no set of facts" Rule 12(b)(6) standard announced in *Conley v. Gibson*, 355 U.S. 41, 47 (1957) "was abandoned over a decade ago" in *Twombly*); *Cox v. Gen. Elec. Co.*, No. 1:12-CV-671-HJW, 2013 WL 3811762, at *1 (S.D. Ohio July 22, 2013) (stating the Supreme Court in *Iqbal* and *Twombly* "expressly and repeatedly rejected" the "former 'no set of facts' language from *Conley v. Gibson* as the pleading standard . . . for Rule 12(b)(6)").

To avoid dismissal under the applicable *Iqbal*/*Twombly* standard, plaintiff must allege that the timeliness of his Title IX claims is "plausible on its face." *See Garrett* Opinion at 3 (citing *Iqbal* and *Twombly*). Whether the plaintiff has done so is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The Court also "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995).

Here, even under plaintiff's outdated Rule 12(b)(6) standard, it is impossible for plaintiff to state a timely Title IX claim based on the following admissions:

(1) **Ohio's two-year personal injury statute of limitations applies to his Title IX claims.** Opp. at 12 ("The Sixth Circuit has long applied a two-year state [sic] of limitations[.]").

(2) **Dismissal of plaintiff's Title IX claims based on the statute of limitations is appropriate where plaintiff's complaint allegations show that the claims are time-barred.** *Id*. at 11.

3

(3) **Plaintiff "was aware he was being sexually abused at the time it was taking place and that he remained aware of that fact for the rest of his life."** *Id*. at 18; *see also id*. at 9 ("The abuse had a profound and long-lasting impact on [plaintiff]. Traumatized by Strauss and with nowhere to turn, [plaintiff] resorted to alcohol to stop the never-ending visions of his abuse.. . . This destructive cycle to forget the abuse he endured continued as JD descended deeper into depression.").

(4) **Numerous students, including plaintiff *himself*, complained to Ohio State "personnel and officials qualifying as 'appropriate persons' under the law" about Strauss's conduct, and Ohio State failed to stop it.** *See id*. at 9 (plaintiff "approached head Athletic Trainer Billy Hill asking, 'Dr. Strauss, what is this guy doing?' Hill simply responded by nodding his head and saying, 'It's not up to me.' . . . not wanting to discuss the details of his abuse, [plaintiff] left Hill's office and never spoke of the matter with anyone at OSU ever again."); *id*. at 2 (there were "skyrocketing allegations of sexual abuse" to which "Ohio State willfully turn[ed] a blind eye"; *id*. at 4 ("Strauss's abuse did not go unreported and beginning in 1979, within Strauss's first year at OSU, students and staff alike reported and referred complaints about Strauss to numerous OSU employees and administrators."); *id*. (Ohio State "corroborated complaints by student-athletes" but "Strauss's abuse was permitted to continue throughout his entire tenure with OSU even though at least fifty OSU employees in the Athletics Department were aware"); *id*. at 5 ("Among the most troubling facts included in the Perkins Coie Report was the number of OSU employees that had specific knowledge of OSU student complaints against Strauss, and yet consciously decided to do absolutely nothing or, in some instances, even admonished the victims"); *id*. at 5 n.3 ("The examples outlined herein are but a small sample of the thousands of cases of abuse suffered at the hands of Strauss. The Complaint details 21 individual instances whereby OSU personnel and officials qualifying as 'appropriate persons' under the law were made aware of, and ignored, credible reports of Strauss's sexual abuse."); *id*. at 7 ("reports of Strauss's abuse began pouring in almost immediately after his employment at OSU began in 1978").

(5) **Strauss's abuse was rampant, pervasive, and widely known by student-athletes (like plaintiff) and faculty.** *See* MTD (Doc. 9) at 11-12; *see also* (4) above.

(6) **Plaintiff knew Ohio State was Strauss's employer.** *See* MTD at 13-15.

(7) **Plaintiff does not argue the *Garrett et al*. Opinions were incorrectly decided or otherwise challenge the Court's findings and conclusions in the *Garrett et al*. Opinions.** *See* Opp. at 1-21.

4

**B.**   **Courts Routinely Dismiss Title IX Claims Based On The Statute of Limitations.**

Plaintiff agrees that dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute of limitations defense is warranted "when the complains shows conclusively on its face that the action is indeed time-barred." Opp. at 11 (quoting *Allen v. Andersen Windows, Inc.*, 913 F. Supp.2d 490, 500 (S.D. Ohio 2012) (dismissing claims based on statute of limitations bar). Plaintiff then cites the Sixth Circuit's decision in *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) in wrongly asserting that the Sixth Circuit has "routinely held" that dismissal pursuant to Rule 12(b)(6) is inappropriate.  *Id.*  In fact, *Lutz* was quoting the Sixth Circuit's decision in *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir.2012), which ***affirmed*** a Rule 12(b)(6) ***dismissal*** based on the statute of limitations.  Both *Lutz* and *Cataldo* also confirmed that Rule 12(b)(6) dismissals based on the statute of limitations are warranted where, as here, "the allegations in the complaint affirmatively show that the claim is time-barred."  *Lutz*, 717 F.3d at 464; *Cataldo*, 676 F.3d at 547.

Consistent with the above authorities, this Court found in the *Garrett et al*. Opinions that, "statute-of-limitations defenses may be properly raised in a Rule 12(b)(6) motion" and "[d]ismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred." *Garrett* Opinion at 6-7.  This Court also cited numerous decisions in which courts have dismissed ***Title IX*** claims pursuant to Rule 12(b)(6) or Rule 12(c) because the pleadings, like plaintiff's Complaint here, affirmatively demonstrated that the Title IX claims were time-barred.  *See Garrett* Opinion at 11-15.  All apply here, and plaintiff cannot avoid them.

**C.**   **The Discovery Rule Does Not Apply.**

Plaintiff states he "does not challenge the fact that the Sixth Circuit has recognized the tension between the Supreme Court's language in the recent *Rotkiske v. Klemm* decision and prior

Sixth Circuit case law" in regard to whether the discovery rule applies to Title IX and Section 1983 claims. Opp. at 12. Plaintiff asserts, however, that the Court should apply the discovery rule to his Title IX claims. Plaintiff's position lacks merit.

Plaintiff does not dispute that neither the Supreme Court nor the Sixth Circuit has held that the discovery rule applies to claim accrual under Title IX. *See* MTD at 6 (citing *Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at \*4 (E.D. Mich. May 6, 2021) (stating "[t]he Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims. . . . The Supreme Court in *TRW Inc. v. Andrews* noted that while many federal courts 'apply a discovery accrual rule when a statute is silent on the issue,' the Court 'has not adopted that position as [its] own.'")). Plaintiff also ignores this Court's express findings in its *Garrett* et al. Opinions that: (1) "[t]here is good reason to think the Sixth Circuit might not adopt the discovery rule in Title IX cases" in light of *Rotkiske*; and (2) "the Supreme Court's analysis in *Rotkiske* is helpful because it assumed that the 'standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action' and that Congress legislates against that standard rule." *See Garrett* Opinion at 8 (citations omitted). In addition, the Supreme Court in *Rotkiske* did not limit its criticism of the discovery rule to the Fair Debt Collection Practices Act, and ***eight out of nine*** justices agreed with Justice Scalia's broad characterization of the discovery rule as a "bad wine of recent vintage." *Rotkiske*, 140 S. Ct. at 360 (citation omitted). For these reasons, the discovery rule does not apply to plaintiff's Title IX claims.

Even applying the discovery rule, however, plaintiff's Title IX claims are time-barred. As this Court found in the *Garrett et al*. Opinions, "Plaintiffs' claim is untimely under both [the occurrence and discovery] rules" because "the accrual date is the same under either rule"—when

each was last abused by Strauss, dropped out of Ohio State, or graduated. *Garrett* Opinion at 10-11, 15. Thus, this Court concluded that "Plaintiffs' Title IX claims are barred by the statute of limitations, even under the discovery rule." *Id*. at 15.  The same reasoning applies to plaintiff's Title IX claims here.

>      **D.      The Sixth Circuit Has Not Recognized A Heightened Risk Theory of Title IX Liability, And Even If It Did, Plaintiff's Title IX Claims are Time-Barred.**

Plaintiff argues the Court's accrual "analysis is inapplicable to claims asserting Title IX liability under a heightened risk or pre-harassment theory" where "the injury that forms the basis of a pre-harassment Title IX claim is the heightened risk of sexual harassment that is caused by the institution's policy of indifference." Opp. at 16.  According to plaintiff, he could not have discovered that he had been subjected to a heightened risk of abuse by Ohio State, *i.e.*, that Ohio State had received past complaints about Strauss by other students but failed to act, until the release of the Perkins Coie Report. *Id*. at 13, 16-18. Plaintiff is wrong.

This Court considered and rejected the same argument in the *Garrett et al*. Opinions:

> Plaintiffs purport to assert a Title IX claim based on "pre-assault" deliberate indifference, which Plaintiffs sometimes style as a "heightened risk" claim. Ohio State is correct that Plaintiffs have not cited any case law suggesting the Sixth Circuit recognizes a "heightened risk" theory of Title IX deliberate indifference. The Court has independently found no cases in which the Sixth Circuit has recognized such a theory . . . .

> Under this theory, Plaintiffs contend that even if they were aware of Ohio State's deliberate indifference to their own complaints of sexual abuse by Strauss, they had no reason to know that Ohio State's deliberate indifference to the complaints made by *other, prior* students heightened the risk that these Plaintiffs would be assaulted in the first place. They contend that they had no reason to know that Ohio State heightened the risk they would be sexually assaulted until 2018, when Ohio State announced that it hired Perkins Coie to investigate Strauss's wide-spread abuse.

> Even if the Sixth Circuit recognizes a heightened risk theory of liability under Title IX, Plaintiffs' claims in this case are barred by the statute of limitations. In cases where the heightened-risk claim is based on a university's deliberate indifference to prior complaints of student-on-student harassment, it makes sense that a plaintiff

may have no reason to suspect the school's knowledge of, and deliberate indifference to, prior complaints until a subsequent investigation, admission, or news report breaks.

Here, however, the perpetrator was an employee of Ohio State. Not only that, but Plaintiffs' complaints make clear that Strauss's abuse was widely known amongst both students and faculty. This general knowledge is enough to have put Plaintiffs on notice that Ohio State may have received complaints about Strauss in the past and yet continued employing him. Accordingly, even if the Sixth Circuit recognizes a heightened risk theory of liability, Plaintiffs' claims are time-barred. *Univ. of Cal.*, 2019 WL 4229750, at *4 ("Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination by Dr. Tyndall means that the statute of limitations period began to run immediately following the examination.") . . .

*Garrett* Opinion at 22-23.  This Court also stated:

Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint.  For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State.  Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.

*Id.* at 19 n.8 (citations omitted). The above reasoning also applies to plaintiff's claims here.

Plaintiff argues,  however, that this Court's analysis in the *Garrett et al*. Opinions does not apply to his Title IX claims because he did not allege that "Strauss's behavior was an open secret" and "widely known amongst both students and faculty." Opp. at 17. Plaintiff's argument is disingenuous.  Plaintiff expressly alleges in his Complaint that not only was he aware Strauss's conduct was abusive at the time it occurred and complained about it to the head athletic trainer, but Strauss' conduct also was widely known.  *See* Complaint at ¶¶ 15, 54 (plaintiff "approached head Athletic Trainer Billy Hill asking, 'Dr. Strauss, what is this guy doing?' Hill simply responded by nodding his head and saying, 'It's not up to me.' . . . not wanting to discuss the details of his abuse, [plaintiff] left Hill's office and never spoke of the matter with anyone at OSU

8

ever again."); *id.* at ¶ 91 (Strauss's "history and scope of sexual abuse at OSU" were "well-known"); ¶ 6 ("reports of his sexual assaults on students began to pour in during Dr. Strauss's very first year at OSU"); ¶ 6 ("scores of reports of Dr. Strauss's sexual abuse were received by OSU administrators"); ¶ 17 ("many OSU employees and officials . . . received scores of credible reports that Dr. Strauss was sexually assaulting students"); ¶ 20 (OSU "receiv[ed] numerous credible reports of Dr. Strauss's sexual abuse of OSU students and student-athletes by no later than 1979 (and then no less than hundreds of reports as the years past)"); ¶ 21 ("rampant sexual abuse of OSU students by Dr. Strauss"); ¶ 23 ("many complaints of Dr. Strauss's sexual abuse and harassment"); ¶ 64 ("pervasive sexual abuse of OSU students and student-athletes by Dr. Strauss for many years"); ¶ 68 ("Beginning in 1978, Dr. Strauss's first year at OSU, and continuing throughout his twenty (20) years at OSU, students and OSU staff reported and referred complaints about Dr. Strauss to numerous OSU employees and administrators."); ¶ 69 ("student-athlete complaints about Dr. Strauss"); ¶ 72 ("complaints of sexual abuse by Dr. Strauss date back as early as 1979, with approximately half the reports occurring from 1979 to 1988, covering the years in which [plaintiff] was sexually abused and assaulted as a student-athlete at OSU"); ¶ 78 ("complaints of sexual assaults by Dr. Strauss continued to skyrocket over the years"); ¶ 78 (complaints about Strauss were "persisten[t], serious[], and regular[]"); ¶ 78 ("reports of Dr. Strauss's abuse began pouring in almost immediately after his employment at OSU began in 1978"); ¶ 111 ("reports of his sexual abuse of students began pouring in"); ¶ 114 ("Moreover, between 1978 and 1996, numerous students and student-athletes complained to OSU administrators and staff about Dr. Strauss' inappropriate conduct").

Citing paragraph 53 of his complaint, plaintiff also incorrectly asserts that he was "expressly made to feel as though he was an isolated victim by his teammates, all of whom denied

having any sort of inappropriate experience with Strauss." Opp. at 17. Contrary to plaintiff's representation, however, paragraph 53 of plaintiff's complaint states in its entirety: "After the exam, knowing that Dr. Strauss had sexually abused him, [plaintiff] was mortified, experiencing both extreme shame and embarrassment." Plaintiff does not allege anywhere in his complaint that his teammates "denied having any sort of inappropriate experience with Strauss." *Id*.

Plaintiff additionally asserts that "[e]ven former OSU employees testified that OSU students could not have uncovered OSU's deliberate indifference to Strauss's abuse," referencing the deposition testimony of "Dr. Ted Grace (former Director of OSU Student Health Services) [who] testified that he did not know 'of any way' that OSU students could have known that OSU 'failed on the job for 20 years to get rid of [Strauss].'" *Id*. at 18. This argument conflates the testimony of Dr. Grace, a second-hand source—33 years after the conduct at issue—with the completely separate issue of claim accrual, which Dr. Grace was not asked to address. The accrual question under the discovery rule does not ask, as plaintiff incorrectly suggests, whether plaintiff knew Ohio State "failed on the job for 20 years to get rid of [Strauss]." The accrual question instead asks whether a reasonable person in plaintiff's position knew, or should have discovered had he exercised reasonable diligence, his injury. *Garrett* Opinion at 7-8. Plaintiff's own complaint allegations affirmatively admit he knew of his injury at the time of the alleged abuse.

Plaintiff does not dispute that, in the cases cited in the *Garrett et al*. Opinions and in Ohio State's motion to dismiss, the ruling courts expressly rejected the same arguments plaintiff makes here—that accrual of his Title IX claims had been delayed because the plaintiffs alleged they lacked information about the schools' roles in not preventing the claimed abuse or because the schools concealed it from plaintiffs. *See Garrett* Opinion at 17-21 (collecting cases); MTD at 14 n.5. In fact, dismissal is even more appropriate in *this* case because plaintiff here—in contrast to

plaintiffs in those other cases—alleges he knew and complained about the abuse at the time it occurred; the school was dismissive of the plaintiff's complaint of abuse; knowledge of the abuser's inappropriate conduct was widespread among students and school employees; numerous other students made contemporaneous complaints about the abuser's conduct; and that the school's alleged indifference to such knowledge and complaints was widely known.

Given the well-established and consistent Title IX jurisprudence, it is not surprising that plaintiff found no Title IX cases supporting his position. Plaintiff fails to cite any Sixth Circuit or Southern District of Ohio case recognizing a "heightened risk," "pre-assault," or "pre-harassment" theory of Title IX liability. *See* Opp. at 14. The cases plaintiff does cite refute his position that such a theory delays the accrual of his Title IX claims:

(1) In *Doe v. Univ. of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016), the court dismissed the plaintiff's Title IX claim alleging the university's policies rendered female students vulnerable to sexual assault by male athletes on the ground that the claim was barred by Tennessee's one-year statute of limitations. *Id*. at 808-809. The court held that plaintiff's Title IX claim began to run on the date the student was sexually assaulted by a student athlete. *Id.*

(2) In *Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist*., 400 F.3d 360 (6th Cir. 2005), the statute of limitations was not at issue because the abuse occurred in the fall of 1999 and the plaintiff, while still a minor, filed suit within the limitations period in January 2001—unlike plaintiff here who was not a minor when the abuse occurred and filed suit 35 years later. *See Hart v. Paint Valley Loc. Sch. Dist*., No. C2-01-004, 2002 WL 31951264, at *1 (S.D. Ohio Nov. 15, 2002); S.D. Ohio Case No. 2:01-cv-00004.

(3) In *McCoy v. Bd. of Educ., Columbus City Sch*., 515 F. App'x 387, 389 (6th Cir. 2013), the statute of limitations was not at issue because the abuse occurred in the spring of 2005, and the plaintiff, while still a minor, filed suit within the limitations period in April 2010—unlike plaintiff here who was not a minor when the abuse occurred and filed suit 35 years later. *See McCoy v. Bd. of Educ., Columbus City Sch*., No. 2:10-CV-298, 2011 WL 3652748, at *1 (S.D. Ohio Aug. 18, 2011).

In addition to the above cases, plaintiff cites to district court opinions outside the Sixth Circuit, which involve or rely upon cases involving Baylor University. *See* Opp. at 16, 18 (citing *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017); *Jameson v. Univ. of Idaho*,

2019 WL 5606828 (D. Idaho Oct. 30, 2019); and *Dutchuk v. Yesner*, No. 3:19-CV-0136-HRH, 2020 WL 5752848 (D. Alaska Sept. 25, 2020)).  These cases actually support Ohio State's position that plaintiffs' claims are time-barred.  Each case addressing Title IX claims alleging the schools were deliberately indifferent to plaintiffs' complaints of sexual assault (the "post-reporting" claims) held that such claims were ***barred*** by the respective two-year statutes of limitations.  *See Hernandez v. Baylor Univ.*, 274 F. Supp. 3d at 617-618; *Jameson v. Univ. of Idaho*, 2019 WL 5606828, at *4; *Dutchuk v. Yesner*, 2020 WL 5752848, at *1-*2, *5.

In regard to the courts' refusal to dismiss the Title IX claims alleging that the schools' conduct increased plaintiffs' risks of being sexually assaulted (the so-called "heightened-risk" claims), this Court's findings in its *Garrett et al.* Opinions that the Sixth Circuit has not recognized a "heightened risk" theory of Title IX deliberate indifference and that plaintiffs' claims are time-barred even if the Sixth Circuit recognized such a theory are consistent with the Fifth Circuit, which subsequently abrogated the *Baylor* decisions in holding: "We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so." *Poloceno v. Dallas Indep. Sch. Dist.*, No. 20-10098, 2020 WL 5494511, at *3 (5th Cir. Sept. 10, 2020).  *Poloceno* also distinguished other courts' recognition of Title IX "heightened risk" claims on the ground that such courts "limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here." *Id.*

As this Court and *Poloceno* make clear, it was critical that the underlying sexual abuse in the *Baylor* and *Univ. of Idaho* cases was student-on-student—not employee-on-student.  Had the abuse been employee-on-student, as plaintiff alleges here, even the judge deciding the *Baylor* cases expressly acknowledged he would have held the claims were time-barred:

> The Fifth Circuit [in *King-White*] concluded that the plaintiffs' Title IX claims
> accrued by the time the victim turned 18 because, even though the plaintiffs (the

victim and her mother) did not know until later about certain school policies and prior complaints from other parents about the teacher, they knew the teacher was employed by the school, knew of the abuse, and knew the school had failed to stop the abuse—which, at the least, would have led a reasonable person to investigate further.

Here, however, Plaintiff was sexually assaulted by another student. Unlike the plaintiffs in *King-White*, where the abuser was a school employee, Plaintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault.

*Hernandez*, 274 F.Supp.3d at 617 (citing *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 762-763 (5th Cir. 2015)).

The above reasoning also is consistent with the numerous Title IX cases cited in this Court's *Garrett et al*. Opinions and Ohio State's motion to dismiss holding that the statute of limitations accrues at the time of the abuse where, as here, a plaintiff is aware of the claimed acts, the abuser's identity, and that the abuser was an employee of the school. *See* MTD at 15 n.6. Additionally, unlike the plaintiffs in the *Baylor*, *Univ. of Idaho,* and *Univ. of Alaska* cases who had no reason to be suspicious of, or investigate, the universities' conduct in creating the heightened risk of sexual abuse until it was exposed by media coverage, an independent investigation was initiated, or a report was released, plaintiff here expressly alleges widespread knowledge of both Strauss's inappropriate conduct and of Ohio State's inadequate response to it.

### E. Plaintiff Was Aware Of The Claimed Causal Connection Between The Alleged Abuse And Ohio State.

Plaintiff also asserts that he "could not have reasonably discovered that OSU was the cause of those injuries until the release of the Perkins Coie Report" in 2018. Opp. at 19. Again, plaintiff is incorrect.

This Court considered and rejected the same argument in the *Garrett et al*. Opinions, stating:

Plaintiffs argue that knowledge of injury is alone insufficient to trigger accrual under the discovery rule and that, instead, a claim does not accrue under the discovery rule until a plaintiff knows or should know of both his injury and its cause. According to Plaintiffs, the "cause" here is Ohio State's deliberate indifference, so their claims did not accrue until they knew or should have known of their injuries and that those injuries were caused by Ohio State's deliberate indifference. . . .

As the Sixth Circuit recently explained, however, in Title IX cases, "'causation' means the '[a]ct caused the '[i]njury,' such that the injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response." *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019). The Sixth Circuit explains that, "[i]mportantly, *Davis* does not link the deliberate indifference directly to the injury (i.e., it does *not* speak of subjecting students to injury)[.]" *Id.* In other words, Plaintiffs' Title IX injury (deprivation of educational opportunities or benefits provided by Ohio State) was attributable to Strauss's abuse, and Plaintiffs knew both of the injury and its cause (the abuse), which was sufficient to put them at least on inquiry notice to determine whether injury would have occurred but for Ohio State's deliberate indifference. . . . Plaintiffs' argument that the statute of limitations did not begin to run until they learned of Ohio State's deliberate indifference via the Perkins Coie report is therefore incorrect as a matter of law.

*Garrett* Opinion at 16-19 (citations omitted). This Court also stated:

Unfortunately, the very effect the abuse had on Plaintiffs (i. e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference.

\* \* \*

Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint. For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State. Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.

*Garrett* Opinion at 18 n.7 & 19 n.8 (citations omitted).

Plaintiff's opposition ignores the above findings in this Court's *Garrett et al.* Opinions.

Plaintiff also does not dispute that the head athletic trainer's dismissive response to plaintiff's

complaint about the abuse (1) was sufficient to put plaintiff on inquiry notice to determine whether his injury would have occurred but for Ohio State's deliberate indifference and (2) require plaintiff to exercise reasonable diligence to determine whether he had any potential claim against Ohio State—which plaintiff pled he failed to do. Accordingly, plaintiff's causation argument should be rejected for the same reasons set out above in the *Garrett et al*. Opinions; Ohio State's motion to dismiss, *see* MTD at 12-16; and Section II(D), *supra*.

      **F.**    **Fraudulent-Concealment Tolling Does Not Apply.**

Plaintiff argues that "OSU's fraudulent concealment tolled the applicable statute of limitations until its actions were made discoverable by the Perkins Coie Report." Opp. at 20.

As this Court found in its *Garrett et al.* Opinions, however, fraudulent-concealment tolling did not apply because:

> As explained above, Plaintiffs were aware of all the elements of their cause of action by the late 1990s. That is, they knew of the injury, the identity of the perpetrator, and the perpetrator's employer. Because Plaintiffs have known for decades about the elements of their cause of action, any alleged misrepresentation or concealment by Ohio State did not prevent them from investigating or pursuing their claims.

*Garrett* Opinion at 20-21 (citations omitted).

The above reasoning is consistent with Supreme Court, Sixth Circuit, and Ohio case law holding, "[i]t is well established . . . that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) ("The right to rely upon fraudulent concealment 'never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.") (quoting *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998)). For the same reasons set forth in this

Court's *Garrett et al*. Opinions and as explained above, plaintiff knew or reasonably should have known of his injuries at the time of the abuse. Hence, plaintiff's fraudulent concealment theory fails for the same reasons his discovery rule allegations do.

The Complaint's allegations of fraudulent concealment also fail for the additional reason that they are coextensive with the substantive wrongs supporting plaintiff's Title IX claims. Fraudulent concealment requires "efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Cheatom v. Quicken Loans*, 587 F. App'x 276, 281 (6th Cir. 2014). In addition, "[f]raudulent concealment requires a showing of affirmative concealment; mere silence or unwillingness to divulge wrongful activities is not sufficient. Instead, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Precious Creation, Inc. v. Mercantile Bank Mortg. Co*., LLC, 731 F. App'x 498, 501 (6th Cir. 2018); *see also Schubert v. Neyer*, 165 N.E.2d 226, 229 (Ohio Ct. App. 1959).

Here, plaintiff's fraudulent-concealment allegations are the same allegations supporting plaintiff's Title IX claims that Ohio State was deliberately indifferent to the abuse and failed to act. *See* Complaint at ¶ 17 ("OSU failed to take any action in removing Dr. Strauss from his position, report him to the proper authorities, nor do anything to inform or protect OSU students from Dr. Strauss."); ¶ 20 ("OSU continued to employ Dr. Strauss, appointed him as the official team doctor of numerous varsity sports and to the Clinic—thereby permitting him to examine and treat students and student-athletes unchaperoned and behind closed doors—and failed to take any reasonable steps whatsoever to prevent Dr. Strauss from sexually assaulting OSU students, until at least 1996"); ¶ 75 ("The Report also shows OSU repeatedly failed to act"); ¶ 116 ("OSU agents, employees, administrators, and officials, armed with this knowledge, had the authority to address

the risk posed by Dr. Strauss, and had the authority to take corrective measures—but until no earlier than 1996, failed to act."). These allegations are insufficient to support fraudulent concealment tolling. *Precious Creation, id.*; *Schubert*, *id*; *see also King-White*, 803 F.3d at 764 (rejecting fraudulent-concealment tolling because the "[p]laintiff's allegations focus[ed] on" the defendants' "failure to act").

Numerous courts have refused to apply fraudulent concealment tolling to Title IX claims.[2] Given this law, it is not surprising that plaintiff does not cite a single case in which a court has tolled the statute of limitations on a Title IX claim (or even Section 1983 claim) based on fraudulent concealment.

The Ohio Supreme Court's decision rejecting fraudulent concealment in *Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268 (2006) is instructive.[3] There, the Ohio Supreme Court held that fraudulent-concealment tolling did not apply to claims asserted in 2004 arising from abuse that occurred between 1980 and 1983. The plaintiff argued tolling should apply because it was not until 2002 that he "first learned that there were other victims" of the same church

---

[2] *See Gilley v. Dunaway*, 572 F. App'x 303, 308-309 (6th Cir. 2014) (Board's failure to report the alleged abuse to governmental authorities did not constitute fraudulent concealment of plaintiff's Title IX claims where plaintiff was aware of facts that "should have aroused her suspicion that she was being sexually abused"); *Forrester*, 2021 WL 1812700, at *7-10 ("Fraudulent concealment is a limited doctrine, and it does not apply to this case."); *Anderson v. Fayette Cty.*, 616 F. Supp. 2d 662, 671 (E.D. Ky. 2009) (similar); *Doe v. Univ. of S. California*, No. 218CV09530SVWGJS, 2019 WL 4228371, at *5 (C.D. Cal. Apr. 18, 2019) (finding that "even if USC attempted to conceal Dr. Tyndall's improper behavior for years following Plaintiff's examination," the plaintiff's "own allegations show[ed] that she independently had reason to believe that Dr. Tyndall did not conduct the examination . . . according to accepted medical standards."); *Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 218CV09648ODWMAAX, 2020 WL 1529313, at *1, 3-4 (C.D. Cal. Mar. 31, 2020) (agreeing with Hospital's argument that "fraudulent concealment d[id] not toll Plaintiff's claims" that doctor had "misrepresent[ed] that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice" because the complaint established "actual or presumptive knowledge" of her claims); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 11 (2d Cir. 2014) (finding fraudulent concealment tolling did not apply to Title IX claims); *King-White*, 803 F.3d at 764–65 (same); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *19 (S.D.N.Y. May 20, 2005) (same).

[3] Even though federal law determines accrual, where, as here, a federal cause of action borrows a state statute of limitations, coordinate tolling principles and rules (other than the discovery rule, which is determined by federal law) are governed by state law, to the extent they are not inconsistent with federal law. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989)); *Dotson v. Lane*, 360 F. App'x 617, 619 n.2 (6th Cir. 2010); *Gainor v. Worthington City Schools*, No. 2:11-CV-561, 2013 WL 6587869, *7 (S.D. Ohio Dec. 13, 2013).

employee. *Id*. at 271, 273. In granting the motion to dismiss, the court stated:

> We hold that Doe's cause of action was not concealed from him—i.e., he knew or should have known all of the elements of potential causes of action against the archdiocese within two years after he reached majority. Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator. Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against the archdiocese.

*Id*. at 279. The same is true here. *See Garrett* Opinion at 19-21. Plaintiff's effort to distinguish *Archdiocese of Cincinnati* on the purported ground that the case "did not involve prior reported cases of abuse of which the defendant had actual notice" fails because the plaintiffs in *Archdiocese of Cincinnati* expressly "alleged that they had no reason to believe that the Archdiocese had known about Strittmatter's abuse until May 2002, when the Archdiocese admitted that it had been aware that Strittmatter had sexually molested young boys at the school and/or the parish where he had been assigned." *Doe v. Archdiocese of Cincinnati*, 2004-Ohio-7003, ¶ 3, *aff'd*, 2006-Ohio-4087, ¶ 3, 110 Ohio St. 3d 157, 852 N.E.2d 157. Fraudulent-concealment tolling of the statute of limitations does not apply.

## III. CONCLUSION.

Given plaintiff's detailed Complaint allegations, all meant to establish the sexual abuse and harm he endured, it is not plausible for his counsel to now advise the Court that plaintiff did not know of his own circumstances and dealings with Strauss. As this Court found in the *Garrett et al*. Opinions: "Unfortunately, the very effect the abuse had on Plaintiffs (i. e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference." *Garrett Opinion* at 19 n.7. Plaintiff's Title IX claims are time-barred consistent with this Court's *Garrett et al.* Opinions. For the reasons stated above, plaintiff's Complaint (Doc. 1) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
E-mail:carpenter@carpenterlipps.com
       bricker@carpenterlipps.com
       barthel@carpenterlipps.com

Special Counsel for Defendant
The Ohio State University

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on November 29, 2021.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University